| 48  421 |
| 59  340 |

THE STATE OF KANSAS v. FRANCIS M. BARTLEY.

1. MURDER *in Second Degree—Copy of Indictment.* Where there is doubt
   as to whether the indictment in the case charges murder in the first or
   the second degree, the assumed errors, arising out of the arraignment
   of the defendant without a copy of the indictment having been served
   on him, and from the limitation of the defendant, in the selection of
   the jury, to eight peremptory challenges, are not material, because
   the state insisted all the way through the trial that the indictment
   did not charge murder in the first degree, and the court instructed
   the jury that it did not charge murder in the first degree, and that
   they could not find the defendant guilty of murder in the first degree.

2. —————— *Peremptory Challenges.* In homicide of any degree less than
   murder in the first degree, the defendant is entitled to but eight per-
   emptory challenges, and the clerk of the district court is not required
   to deliver a copy of the indictment to the defendant, unless first de-
   manded by him.

3. —————— *Continuance.* Where, upon an application for a continuance,
   on account of the testimony of an absent witness, the state consents
   that the facts set up in the affidavit in support of the application
   shall be read in evidence, in behalf of the defendant, as the deposi-
   tion of the absent witness, the defendant is not entitled to a con-
   tinuance on that ground.

4. AFFIDAVIT *as Deposition—Absent Witness—Impeachment.* When, on
   an application for a continuance to procure the testimony of an ab-
   sent witness, the facts set up in the affidavit in support of the ap-
   plication are, by consent, read in evidence, in behalf of the party
   making the application, as the deposition of the absent witness, it
   is error for the court to permit alleged statements of the witness,
   made out of court, to be introduced to impeach his evidence in his
   said deposition, his attention at no time having been called thereto,
   and he having had no opportunity to explain them.

*Appeal from Brown District Court.*

THE opinion contains a sufficient statement of the case.

*James Falloon,* for appellant.
*W. F. Means,* county attorney, for The State.

Opinion by STRANG, C.: November 16, 1888, the grand
jury of Brown county returned an indictment charging Fran-

cis Bartley and one Elbert Lawson with the killing of Thomas Moore, on the 4th day of that month. The defendant and Lawson left the country soon after the killing, and neither of them returned until the defendant was brought back on a requisition from Tennessee, where he was arrested in the summer of 1891. Lawson has never been back. Bartley was tried at the November term of the Brown county court in 1891, and convicted of manslaughter in the second degree. A motion for new trial was overruled, and he was sentenced to serve a period of five years in the penitentiary. From this judgment and sentence he appeals to this court.

Counsel for the defendant alleges the following errors on the part of the trial court:

"1. The court erred in requiring the defendant to be arraigned, no copy of the indictment ever having been served on him.

"2. In limiting the defendant to eight peremptory challenges in selecting the jury.

"3. In overruling the defendant's application for a continuance.

"4. In receiving incompetent testimony.

"5. In giving and refusing instructions."

The circumstances of the case are briefly as follows: In the afternoon of November 4, 1888, the defendant, Elbert Lawson and Charles D. Short drove from Baker to Horton, arriving there about five o'clock, and remaining until toward six o'clock, when they drove across the line into Atchison county, to a place called the "Log Cabin," a place where liquor was sold. After taking several drinks of beer, they drove back to South Horton, to a house of ill-fame, known as "No. 99." There were but two persons at this place when they arrived — Kittie Stewart and Hattie Case, inmates of the place. A few minutes after the arrival of the defendant and his companions, Thomas Moore and William Dougherty drove up, hitched their team, and entered the place. Both parties were in the house some minutes, when Short was taken sick and went out on the porch. Bartley went out off of the porch, and out in the

bushes on an errand personal to himself. Moore and Dougherty left the house, going out through the gate to the vicinity of their team, and Dougherty commenced to untie the team, when Lawson said: "Which one of you fellows drawed a gun on the party sitting there?" This question was asked by Lawson of Moore and Dougherty in relation to drawing a gun on Bartley. Moore said: "Whoever said we drawed a gun on anybody is a liar." Lawson replied: "I won't take that off of any man," and immediately fired at Moore. So far there is no dispute as to the conversation just previous to the shooting. The state claims that when Lawson fired he called, "Frank, where is your gun?" and that Bartley arose from where he was sitting and said: "Here it is, and I will use it," and thereupon fired at Moore; that Moore turned around and said, "My God, Will., they have killed me!" and fell. The defense claims that Lawson fired both shots; that when he fired the first shot he said, "Frank, where is your gun?" but that Frank made no reply, and Lawson moved a few steps and fired the second shot. When the shooting occurred, Dougherty ran into the timber, and went up to Horton proper. The defendant, Lawson and Short got into their buggy and drove back to Baker, left the wagon at the stable where they got it, and went out into the country, and after hiding around a few days left the community entirely, Bartley going to Washington territory, Oregon, Colorado, Texas, and back to his father's home in Tennessee. He says he left because he was afraid of a mob; that before he left he sent a party to see counsel, and was advised to go away for the time being.

The first and second assignments of error go to the arraignment of the prisoner without a copy of the indictment first having been served on him, and to the ruling of the court in limiting the defendant to eight peremptory challenges, instead of allowing him 12. Both of these objections are based upon the theory that the indictment in the case charges murder in the first degree. We think counsel is in error in regard to the character of the indictment, and that it only charges murder

1. Murder in second degree— copy of indictment. in the second degree. But whatever its character may be in that respect, the state insisted all the way through the trial that it charged only murder in the second degree, and the court in its charge to the jury said it charged only murder in the second degree, and in- 2. Peremptory challenges. structed the jury that they could not find the defendant guilty of murder in the first degree. It follows, therefore, that there is no material error in either of these assignments.

The next assignment relates to the overruling by the court of the defendant's motion for a continuance. The defendant asked a continuance because of the absence of certain persons who, he alleged, were material witnesses in his behalf. He showed diligence in trying to procure their evidence, and set out in his affidavit what each of the witnesses would testify to if present in court. The state elected to admit such affidavit as the depositions of the absent witnesses. The defendant still insisted upon his right to a continuance, notwithstanding the offer of the state to admit his affidavit as the depositions of the absent witnessess. The court ruled against him and required him to go to trial. Was such ruling error? This question is 3. Continuance. settled, both by our statute and the decisions of this court, against the claim of the defendant. That portion of our statute more particularly material in that regard reads as follows:

"If thereupon the adverse party will consent that on the trial the facts alleged in the affidavit shall be read and treated as the deposition of the absent witness, . . . . no continuance shall be granted on the ground of the absence of such evidence." (Civil Code, § 317.)

Here is a positive statutory declaration that, if the opposite party will consent that the facts alleged in the affidavit shall be read in evidence, no continuance shall be granted. This court has passed upon this question in the following cases, and held that under the statute, when the facts alleged in the affidavit for continuance are admitted as the deposition of the

absent witness, the party applying is not entitled to a contin-
uance on account of such absent witnesses: *The State v.
Thompson*, 5 Kas. 159; *The State v. Dickson*, 6 id. 209; *The
State v. Adams*, 20 id. 311; *The State v. Rhea*, 25 id. 579;
*Sanford v. Gates*, 38 id. 405; *Rice v. Hodge*, 26 id. 168; and
*Brown v. Johnson*, 14 id. 377.

The next assignment relates to the admission of evidence
of the statements of Charles D. Short, made before the grand
jury, to impeach the testimony of said Short in his deposi-
tion read in evidence in behalf of the defendant. This is
the most serious question raised in the record of the case.
While, perhaps, this exact question has never been passed
upon by this court, the court has passed upon questions so
nearly analogous to this one as to render them controlling in
this case. To defeat the application for a continuance, the
statute not only provides that the state must consent that the
facts alleged in the affidavit in support of the application for
a continuance shall be read in evidence, but that they shall be
read as the deposition of the absent witness, or witnesses. It
is apparent that the law-making power intended that the facts
so admitted in evidence as the evidence of the absent witness
should have all the force and effect of a deposition of such
witness regularly taken. That being our view of the statute,
the question arises, would the statements of Charles D. Short
before the grand jury have been admissible to impeach the
evidence of said Short in behalf of the defendant, if such
evidence consisted of his deposition, regularly taken, and in
the absence of any cross-examination of said Short in relation
to his said statements before the grand jury? We think not.
This question was settled by this court in the case of *Greer v.
Higgins*, 20 Kas. 420. In that case the court says:

"Where the deposition of a witness has been read in evi-
dence, and the opposing party produces another and conflict-
ing deposition by the same witness in another action between
the same parties, of a prior date, and offers to introduce the
same to impeach the witness, and the court of its own motion
excludes the testimony, *held*, not error, as the witness sought

to be impeached, and the party to be affected thereby, are entitled, of right, to any explanation which the witness can give of the statements imputed to him. The attention of the witness must be first called, on cross-examination, to such prior contradictory statements."

The questions decided in the following cases are so closely analogous to the one in this case as to be practically controlling here. In *Machine Co. v. Clark*, 15 Kas. 495, the court says:

"That it is error for the court to allow one party to attempt to impeach the testimony of the witness of the other party by reading to the jury a portion of a deposition formerly taken of the witness, without first having called the attention of the witness to any portion of the deposition, and without giving the witness any opportunity to explain."

In *The State v. Cleary*, 40 Kas. 288, the court held, that—

"Before a witness can be impeached by contradictory statements made in his evidence on a former trial, such contradictions must be called to his attention; and it is error to introduce them without having laid any foundation." (See also *The State v. Small*, 26 Kas. 209.)

The state insists that it was not error to introduce the statements of Short made before the grand jury without having cross-examined him and laid the foundation therefor, because, as the evidence of Short, introduced in behalf of the defendant, consisted of facts stated in defendant's application for a continuance which were admitted as the depositions of the witnesses therein named, and the state, therefore, had no opportunity to cross-examine Short and lay a foundation for the admission of his statements made before said grand jury, the rule in relation to laying a foundation for the admission of such evidence should not prevail. It must not be forgotten, however, that the state has admitted the facts stated in the affidavit for continuance as the deposition of Short, and by so doing has, under our statute, forced the defendant to trial without the personal presence of Short as a witness in his behalf, and that, having done so, it would be unjust to the de-

fendant to thus force him to trial without his witness in court, and then, because he was not there and the state could not on that account cross-examine him and lay the foundation for the admission of impeaching declarations made elsewhere, relax the rule that requires a foundation to be laid for the admission of such statements. Such a course would deprive the defendant of the right under the law to have his witness explain any statements imputed to him outside of his evidence in court.

It was held in New York, in the case of *Hubbard v. Briggs,* 31 N. Y. 518, and also in Ohio, in the case *Bunyan v. Price,* 15 Ohio St. 1, that where a deposition of a *deceased* witness was read in evidence by consent, another and conflicting deposition of the same witness, at a prior trial, could not be read in order to impeach the witness, as the attention of the witness had not been called to the conflict. These cases were cited and approved by this court in *Greer v. Higgins,* 20 Kas. 425. For

4. Absent witness—impeachment.

these reasons we think the court erred in allowing the statements of Charles D. Short made before the grand jury to be given in evidence, to impeach his testimony on the trial of the case in behalf of the defendant. As this case goes back for a new trial, we desire to call attention to the cases of *The State v. Hendricks,* 32 Kas. 579; *The State v. Rhea,* 25 id. 576; *The State v. Mowry,* 37 id. 369; *The State v. Mize,* 36 id. 187, and *The State v. Estep,* 44 id. 575, in regard to instructions relating to the degree of the offense charged in the indictment.

It is recommended that the judgment of the district court be reversed, and the case remanded for a new trial.

By the Court: It is so ordered.

All the Justices concurring.