THE BUFFALO VALLEY OIL & GAS COMPANY V.
B. E. JONES *et ux.*

No. 14,526   (88 Pac. 537.)

SYLLABUS BY THE COURT.

1. OIL-AND-GAS LEASE—*Abandonment by the Lessee.* Where an
oil-and-gas lease covering lands located in a field which is.
being actively developed is given for a term of two years,
and contains a provision that in case oil or gas is found on
the premises the lease may be continued in force by the lessee
so long as he diligently develops the land and markets the
product, the failure of the lessee to use reasonable diligence
in the respects named will cause the lease to lapse.

2. —— *Question of Fact.* What constitutes reasonable dili-
gence in such a case is a question of fact.

Error from Wilson district court; LEANDER STILL-
WELL, judge. Opinion filed January 5, 1907. Affirmed.

STATEMENT.

PRIOR to and since February 1, 1902, the defendants
in error were the owners of about 200 acres of land ly-
ing in one body near the town of Buffalo, in Wilson
county. This property was within the oil-and-gas belt

of that county, which was then being actively developed. On the first day of February, 1902, the defendants in error executed a gas-and-oil lease on their premises to one Neils Esperson, which with the consent of the lessors was assigned, ánd March 15, 1904, the plaintiff in error became the owner and holder thereof. The lease, so far as necessary to show the points in controversy, reads:

"(1) WITNESSETH: That the parties of the first part, in consideration of one dollar, the receipt whereof is hereby acknowledged, and of the covenants hereinafter contained on the part of the said party of the second part, do hereby lease unto the party of the second part the exclusive right for two years from the date hereof, subject to the conditions hereinafter stated, to enter upon, operate for and procure oil and gas upon the following premises, situated in Wilson county, state of Kansas, to wit: [Here follows a description of the land.]

"(2) The party of the second part agrees to deliver to the parties of the first part one-tenth of the oil realized from these premises, in tanks at the wells, without cost, or pay the market price therefor in cash, at the option of the first parties. ˙

"(3) If oil or gas be found on these premises all rights, benefits and obligations secured hereby shall continue so long as either can be procured in˙paying quantities and party of the second part shall diligently make and utilize the same for the joint benefit of the parties hereto.

"(4) For any and all wells drilled that produce gas in sufficient quantities to be utilized and marketed, the second party shall pay first parties therefor fifty dollars per year during the time such well or wells so produce gas. . . .

"(5) In case no oil- or gas-well be drilled on said premises within one year from date hereof, all rights secured under this contract by the party of the second part shall cease.

"(6) Provided, however, that the second party shall have the right at any time to terminate this lease by notice in writing, or by surrendering this lease, and shall thereafter be released from all obligations and liabilities under the same.

"(7) It is distinctly understood that time is of

essence in this contract in all its terms and conditions.  .  .  .
"(8) The party of the second part shall not be permitted to assign or transfer his interest in this lease, or any part thereof, without the written consent of the parties of the first part hereto first had."

Afterward the lessors agreed that the lease might be assigned. The plaintiff in error drilled one well upon the leased premises, in which was found an abundance of gas and a small amount of oil. This well was completed about July 9, 1902, and immediately thereafter the derrick and other drilling appliances were removed from the leased lands, and work thereon ceased.

The plaintiff in error also held a lease on about 400 acres of land owned by one White, which was immediately southwest of and adjoining the tract upon which the completed well was located. After abandoning the work of development under the Jones lease the lessee began work on the lands leased of White, and drilled seven or eight wells thereon, all of which produced gas, and one contained considerable oil. While digging these wells on the tract belonging to White the plaintiff in error used gas from the well on the Jones land for drilling purposes. When gas was found in large quantities on the White lands the plaintiff in error attempted to obtain contracts for lighting the cities of Wichita, El Dorado, Yates Center and other places, and in February, 1904, completed an arrangement for piping gas to Yates Center. The plaintiff in error also took steps to obtain a contract for lighting the town of Buffalo with gas, and to supply the brick plant at that place with gas for fuel.

On April 8, 1904, this suit was brought in the district court of Wilson county to cancel the lease of the Jones land.

There are several gas-wells on land adjacent to the Jones land on the northeast, which, taken in connection with those on the Jones and White premises, all active

wells with good pressure, and located practically in a line from the northeast to the southwest across the Jones lands, indicate to experts in the oil-and-gas business, and to the officers of the plaintiff in error, that large quantities of gas underlie the entire Jones tract.

No rental had been paid by the lessee before the commencement of the suit.

The petition set forth substantially the foregoing facts. A general demurrer thereto was overruled, and the case was tried to the court without a jury. The court found generally for the plaintiffs and annulled the lease, except as to one-half of an acre, square in form, in the center of which was the completed gas-well. The defendant complains.

*Jones & Finley,* for plaintiff in error.

*McClain & Apt,* for defendants in error.

The opinion of the court was delivered by

GRAVES, J.: It is claimed that the district court erred in overruling the demurrer to the petition, and also in finding for the plaintiffs upon the trial. The petition contained averments of fact as to the conditions of the lease not in the written instrument, which would be admitted by a demurrer but could not be proved if proper objections were made to the evidence when offered. Many of these allegations were not established at the trial, and therefore the petition may be said to present a stronger case for the plaintiffs than is shown by the testimony given. We think the court was clearly right in its ruling on the demurrer.

As to the findings of the court on the trial, it does not appear what particular point controlled its decision, but from the discussion of counsel it seems probable that it was based upon the conclusion that the lease had expired. The two-year term provided for in the first clause had passed more than two months before suit was commenced, and the only provision

under which it might have been continued is the third clause, which reads:

"If oil or gas be found on these premises all rights, benefits and obligations secured hereby shall continue as long as either can be procured in paying quantities and party of the second part shall diligently market and utilize the same for the joint benefit of the parties hereto."

From this it will be seen that two things must concur to extend the life of the lease beyond the period of two years: First, oil or gas must be found in paying quantities; second, the lessee must be diligent in placing the product found upon the market. Gas was found in paying quantities. Whether the lessee used proper diligence or not is a question of fact. This question was decided by the trial court against the plaintiff in error.

In the absence of special findings of fact this court will assume that the trial court regarded as established all the facts shown by the evidence which were favorable to the successful party. The claim of the plaintiff in error that it used due diligence in developing the lands covered by the Jones lease is not sustained by the evidence, when construed as above stated. The only effort made by it to develop these lands was to drill one well in the southwest corner of the tract. For nearly two years thereafter it diligently developed the territory embraced in the White lease, and sunk eight wells thereon adjacent to the one well on the Jones land. All of these wells produced a good flow of gas. The efforts to procure a market for the product of these wells were made when the only gas which the company could furnish was that which came from the wells on the land owned by White. The gas which has been and is now being furnished to the city of Yates Center comes exclusively from the White wells, and he gets the royalty therefor. If any of this gas comes from the Jones tract it is because of drainage

therefrom into the White wells. Whatever Jones loses in this way, if anything, is beneficial to White.

The cessation of all work under the Jones lease for two years, and the failure to pay any of the accrued rental for that time, while conducting developments on adjoining property, looks very much like an abandonment of all rights claimed under such lease. It may at least be said that the plaintiff in error has failed to do the acts which in its contract with Jones it expressly agreed to perform for the purpose of continuing the life of the lease. These acts—necessary to the existence of the lease—not having been done, it is at an end. This is the result of the plaintiff in error's admitted unfaithfulness to Jones, and it is not in a position to complain.

The district court segregated the land occupied by the well from the other land of the Jones tract, and canceled the lease as to such other land, leaving the lessee to hold and enjoy the limited fruit of the labor performed and expense incurred by it thereunder. None of the parties objects to this segregation, and we have no occasion to consider it.

The judgment as a whole is eminently fair and just, and is affirmed.