CLYDE L. DAY et al., *Appellees*, v. THE KANSAS CITY PIPE LINE COMPANY, *Appellant*.

No. 17,724.

SYLLABUS BY THE COURT.

1. PETITION—*Inconsistent Counts—Motion—Judicial Discretion.* If a defendant objects to the inclusion of inconsistent counts in a petition and intends to ask the court to require the plaintiff to elect on which count he will rely, the objection and motion should be made before answer, and if he fails to make them until after the issues are joined it is no abuse of discretion if the court denies a motion to compel an election made at the beginning of the trial, and in no event could the rights of the defendant have been prejudiced as the court, after hearing the evidence, eliminated one of the counts from consideration.

2. GAS LEASE—*Due Diligence—Failure to Develop—Cancellation.* A gas lease for a term of ten years, for a stated consideration, provided that if gas was found the lessor was to have sufficient gas for domestic purposes; that the lessee was to drill four wells within six months and to continue drilling as long as paying wells were found or royalties paid; and for the gas sold or marketed from producing wells the lessee was to pay to the lessor $100 per year on each well, such payment to be made on each well within sixty days after commencing to sell gas and annually thereafter while gas was so sold. *Held,* that the lease contemplated that the land should be developed with due diligence, and upon a failure to do so the lessor was entitled to a cancellation of the lease as to the undeveloped land.

3. —— *Same.* What was due diligence in the case was a question of fact for the trier of the facts, and upon a consideration of the evidence it is held to be sufficient to sustain the finding of the trial court that due diligence in the development of the whole tract had not been exercised by the lessee.

Appeal from Wilson district court. Opinion filed July 6, 1912. Affirmed.

*John J. Jones,* of Chanute, and *Eugene Mackey,* for the appellant.

*H. P. Farrelly,* and *T. R. Evans,* both of Chanute, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: In this case a judgment was entered cancelling a gas lease. On April 20, 1903, Smith Day and his wife were the owners of a 600-acre farm in Wilson county, and on that date leased it to I. N. Knapp for oil- and gas-mining purposes. The interests of the Days in this farm and lease became vested in the appellees, the heirs of Smith Day, deceased, and that of Knapp in the appellant. The lease was in the usual form, reciting a consideration of $600, ran for a term of ten years, and, as to the finding of gas, provided that if gas was found the lessors were to have

therefrom sufficient gas for domestic purposes and the lessee was to have the remainder for his own use; but if he should sell or market it from any well producing gas only he was to pay the lessors $100 per year for the time the gas was sold or marketed, such payments to be made on each well within sixty days after commencing to sell the gas therefrom and annually thereafter while gas was so sold. The lease also required the lessee to drill four wells within six months and to continue drilling as long as paying wells were found or royalties were paid. Before Knapp assigned the lease to the appellant he drilled four wells, as required by the terms of the lease, completing them within six months after the date of the lease. These four wells were all located on 80 acres of the leased land, were all producing, and on them the specified royalties were paid, and the 80-acre tract on which they were sunk is not specifically involved in this controversy. After the completion of the fourth well, on August 31, 1903, no further drilling was done either by Knapp or his assignee until August, 1909. In the meantime, and on February 27, 1907, the appellees commenced the present action asking for a cancellation of the lease as to all of the undrilled portions of the premises by reason of the failure of the appellant to drill more than the four wells above referred to. It was a petition for equitable relief for failure to properly develop. Issues were joined, a trial had, and a judgment rendered in favor of the pipe line company, from which an appeal was taken to this court, and on consideration here the case was reversed (*Day v. Pipe Line Co.*, 82 Kan. 861, 109 Pac. 186) on the authority of *Howerton v. Gas Co.*, 82 Kan. 367, 108 Pac. 813, and remanded for further proceedings below in order to determine whether adequate relief could be obtained in damages.

Following the filing of the original petition on February 27, 1907, and during the year 1909, the pipe line company drilled four more wells, all producing, on

another 80 acres of the lease, and, later, a dry hole on the same eighty, making in all nine wells, all located on two separate eighties of the six-hundred-acre lease. No other wells were or have been drilled on the premises.

Upon the remanding of the cause to the lower court an amended petition was filed setting up a cause of action for damages as well as one for the cancellation of the lease. An answer was duly filed and issues joined. When the cause came on for the second trial the appellant moved that appellee be required to elect upon which of the two causes of action they would stand, but the court denied the motion. A jury was then impaneled to try the matter of damages but, upon the closing of the evidence, the court withdrew the cause from the jury and discharged it from consideration of the case for the following reasons, as set out in the journal entry:

"Whereupon, the court discharged the jury from further consideration of the cause for the reason that it appeared from the evidence that there was no case made out as to the question of damages alleged in plaintiffs' first cause of action, with any reasonable certainty, or that could afford plaintiffs any adequate relief; and the court reserves to itself all questions presented in the trial of the case."

The judgment of the court was that the lease should be canceled as to all of the undrilled portions of the premises, except the 80 acres upon which the first four wells were drilled and the 80 acres upon which the last four wells were drilled. As to the latter eighty it was decreed that if the appellant elected, within thirty days after the rendition of the judgment, to pay the rental or royalty provided by the terms of the lease from April 20, 1905, to the date of the judgment the lease would be deemed to be valid, otherwise it should stand canceled. In effect, the court held that the four wells last drilled should, in the exercise of reasonable diligence, have been drilled in the year 1904 instead of in

1909.   The appellant was allowed one year after the wells should have been drilled within which to market the gas and begin the paying of royalties, or from April 20, 1905, as above stated.   It is from this judgment that the present appeal is taken by the pipe line company.   It contends that the amended petition of the appellees contained two inconsistent causes of action and that the court erred in not requiring an election. Parties may, by consent, try cases in which inconsistent causes of action are joined.   The nature of each cause of action set out in the petition of appellees was clearly stated and if the appellant was unwilling to enter upon the trial of them objection should have been made before answer was filed.   Without challenging the right of the appellees to unite the two causes of action appellant recognized the propriety of the pleading and answered as to both counts.   Afterwards a motion to require an election was made but the court concluded to hear the testimony and overruled the motion.   In a sense the causes of action are inconsistent as one of them proceeds on the theory that the lease is to continue as a binding obligation while the other is that there has been a forfeiture and it is to be canceled as to part of the land.   Assuming that there is an inconsistency it was apparent on the face of the petition, and as the appellant did not raise the question until after answer it was a matter of discretion with the court whether an election should then be ordered. (*Tuthill et al. v. Skidmore et al.,* 124 N. Y. 148, 26 N. E. 348.)

After hearing the testimony the court took the question of damages out of the case, which left only the single cause of forfeiture for trial and judgment.   The appellees explain that the claim of damages was added to the petition in order to comply with the ruling of this court in the Howerton case.   According to that ruling before the appellees could secure a cancellation of the lease it devolved on them to show that damages

could not be ascertained with reasonable certainty and that therefore that remedy was inadequate. When appellees were offering proof under the count for damages they were then demonstrating, as they were required to do, that the damages sustained could not be measured with certainty. About the same character of evidence was required as to each, and it was not very important whether it was received under the count for damages or under the other count as a prerequisite to a forfeiture. In no event can the fact that an election was not required when it was asked for have operated to the prejudice of appellant.

It is contended that the evidence did not warrant the cancellation that was adjudged. Appellant says that the lease does not expressly provide how many wells shall be sunk on the land; that in the development two dry holes were drilled, and that it had reason to believe that further drilling would be attended with great risk and many dry holes be found, and as each costs a large sum. of money it was not required to run that risk. It also says that the number of wells which shall be sunk on land is not to be determined by the landowners, nor yet by the courts, but is to be determined by the operator so long as he acts in good faith. The lease contains a stipulation that the lessee was to drill four wells within six months and to "continue drilling as long as paying wells are found or royalties are paid." The lease contemplates that the land shall be developed with reasonable diligence, and what is due diligence is a question of fact which has been decided adversely to the contention of appellant. (*Gas Co. v. Jones,* 75 Kan. 18, 88 Pac. 537; *Mills v. Hartz,* 77 Kan. 218, 94 Pac. 142; *Howerton v. Gas Co.,* 81 Kan. 553, 106 Pac. 47; *Collins v. Oil & Gas Co.,* 85 Kan. 483, 118 Pac. 54.)

It was the manifest intention that the tract leased was to be developed for the mutual benefit of both parties, and the only substantial benefit to be derived by appellees was the royalties to be paid from drilled

and operated wells. It was not enough that exploration should be made and gas found and allowed to remain in place on the land. It was not enough that four wells should be drilled within six months, or any limited number, on a part of the tract, but it was specifically required that drilling should continue with reasonable diligence so long as paying wells could be found. The appellant was, of course, not required to develop land that had been tested and found to be unprofitable for operation, but if paying wells could not be found on the land or any part of it there is no reason why appellees' title should be longer clouded with a barren encumbrance nor any reason why appellant should resist a cancellation. If paying wells may be found and appellant does not continue to drill and develop with reasonable diligence there is a violation of the agreement and the appellees are entitled to a cancellation. Only 160 acres of the six-hundred-acre tract had been developed to any extent. For a period of about six years before the action was brought there was no development of any of the land except upon one eighty-acre tract. The commencement of the action appears to have spurred appellant to activity and since that time five wells have been drilled on another eighty-acre tract and all but one of these were productive. This can not be regarded as a compliance with the terms of the agreement, and there was therefore a good basis for the finding that appellant had not developed the land with reasonable diligence.

Although there is complaint, the court carefully protected the rights of appellant as to the eighty-acre tract that was developed after the litigation was instituted. In effect the court held that if reasonable diligence had been used this tract would have been developed in 1904 and that a reasonable time thereafter in which to find a market for the gas was one year, and so the court gave appellant the alternative of paying the royalties which would have accrued after

April 20, 1905, and if it did so within a stated time after the decree the lease, as to this eighty-acre tract, would be upheld, but if the royalties were not so paid the lease, as to this tract, would stand canceled. This was an equitable disposition of the case, and was, in fact, suggested in the answer of appellant where it stated that if the court ultimately determined that rentals or royalties should be paid on any of the land it was able and willing to pay them and therein tendered such payment. Now that it has been ultimately determined that payment is due and necessary to the validity of the lease on this tract the trial court will doubtless accept the payments so tendered although the time given in the judgment for payment has expired.

No error is found in the rulings and therefore the judgment is affirmed.