No. 38,127

SHIRLEY E. BRISCOE and EDNA A. RATHBUN, *Appellants,* v. JUNE RESCHKE, MELVIN R. STOLP and BEULAH STOLP, *Appellees.*

(226 P. 2d 255)

Opinion filed January 6, 1951.

*William R. Howard,* of Arkansas City, argued the cause, and *W. L. Cunningham, D. Arthur Walker,* and *Wm. E. Cunningham,* also of Arkansas City, were with him on the briefs for the appellants.

*Harry O. Janicke,* of Winfield, argued the cause, and *J. A. Herlocker,* also of Winfield, was with him on the briefs for the appellees.

The opinion of the court was delivered by

KAGEY, J.: This is an appeal by plaintiffs in the court below from a general judgment in favor of defendants, in an action brought by the plaintiffs for specific performance of an alleged family settlement and agreement and an accounting of rents and profits—proceeds received from the sale of oil and gas from 225 acres of land—and setting aside certain deeds to Melvin R. Stolp and Beulah Stolp, defendants.

Plaintiffs and defendants—except Beulah Stolp, wife of defendant Melvin R. Stolp—are the children of H. C. Stolp, also known as Henry C. Stolp, and Nora Stolp. Prior to March 8, 1935, H. C. Stolp and his wife Nora Stolp were the owners of certain personal property and real estate. The real estate consisted of one tract of 160 acres, another tract of 120 acres, and a third tract of approximately 65 acres. The first two tracts were in the name of H. C. Stolp and the third or 65-acre tract was in the name of Nora Stolp. On March 8, 1935, Nora Stolp died intestate and thereafter and on or about June 1, 1938, H. C. Stolp deeded the two tracts of land in his name to Melvin R. Stolp and Beulah Stolp, his son and daughter-in-law, and joined with plaintiffs and June Reschke, defendant, in deeding their interests in the 65-acre tract to Melvin R. and Beulah Stolp. The 120-acre tract was sold by the grantees in 1944. On May 12, 1948, a producing well was drilled on the 160-acre tract and in December, 1948, two additional producing wells were brought in on the 65-acre tract. On November 12, 1948, plaintiffs filed this action against the defendants alleging (by petition and amendment thereto) that during the month of May and the first part of June, 1938, all the parties in this lawsuit had a meeting at the home of Edna A. Rathbun and one or two meetings at the home of Shirley E. Briscoe about deeding the three tracts of land to Melvin and Beulah Stolp; and

"That it was mutually agreed by and between said parties that Henry C. Stolp and the four children were joint owners of said property and that the four children should become partners and handle the same as a partnership as follows: That all of said four children agreed to see that their father, Henry C. Stolp, who was getting feeble and advanced in years was given good care and comfortable treatment as long as he lived and to jointly contribute for his support and care if it became necessary or furnish him a home with such of the children as he desired to stay with; that said four children, as partners to-

gether with their father agreed that their father and three of the children would make, execute and deliver deeds to the fourth child, Melvin R. Stolp and Beulah Stolp, his wife, on the aforesaid 225 acres and would thereby transfer the legal title to Melvin R. Stolp and Beulah Stolp, his wife, and the said Melvin R. Stolp and Beulah Stolp, his wife, as the sole and only consideration for said deeds promised and agreed with the three remaining partners, towit: Shirley E. Briscoe, Edna A. Rathbun and June Reschke, that any and all money, income and proceeds received from the sale of oil, gas, or minerals, during the lifetime of any of said partners, from any of said 225 acres of land deeded to them and described as follows, to-wit: (description of land) should belong to said partnership, if, as and when received, and should be divided as follows:

An undivided ¼th to Shirley E. Briscoe;

An undivided ¼th to Edna A. Rathbun;

An undivided ¼th to June Reschke;

An undivided ¼th to Melvin R. Stolp."

Plaintiffs further allege that they executed the deeds to the defendants Stolp because of their reliance upon the promises then made, and the confidential relationship existing between the parties; and that as a consequence, the defendants Stolp became trustees of the income received from the oil wells for the plaintiffs, and June Reschke. An allegation was made that the Stolps were guilty of fraud because of their refusal to account to the plaintiffs. Plaintiffs asked specific performance of the alleged family agreement, an accounting, and a judgment setting aside the deeds to the 160-acre and 65-acre tracts. By order of the court, plaintiffs further stated that the family settlement was partly oral and partly in writing, as evidenced by the deeds.

To the petition as amended, defendants Melvin R. and Beulah Stolp filed an answer and defendant June Reschke answered separately. The answers were substantially the same except with reference to execution of the deeds, and admitted the residence of the parties, the death of Nora Stolp and allegations as to the heirs at law of Nora Stolp; and further answered that Nora Stolp was the owner of the 65-acre tract and there had been no administration or probate of her estate in Kansas or elsewhere; defendants admitted execution of the deeds as alleged in plaintiffs' petition, and denied all other allegations of the petition. As additional defenses, defendants alleged the existence of another action pending in the district court of Cowley county, Kansas, involving the same parties and asking the same relief as prayed for in the petition in this action, the bar of the statute of limitations, and laches. June Reschke, in her separate answer, stated that she signed "said deed" at the re-

quest of her father H. C. Stolp, to avoid foreclosure of an existing mortgage upon the real estate known as the 65-acre tract and the other real estate and personal property and without any promise or agreement being made on the part of her co-defendants. It was also asserted by the defendants that H. C. Stolp was a necessary party defendant. Plaintiffs' reply was a general denial.

Trial on the above issues was commenced on January 10, 1950, and concluded on February 13, 1950, with an intervening continuance. Argument was waived on February 20, 1950, and on February 27, 1950, the court found *"generally in favor of the defendants and against the plaintiffs as to all matters of fact"* (italics supplied) and rendered judgment in favor of the defendants, resulting in this appeal.

Appellants state the court erred in refusing to admit subsequent sworn and unsworn statements of H. C. Stolp in opposition to a previous deposition; in receiving incompetent evidence and evidence of a transaction and communication with a deceased person; in not setting aside the deed (to the 65-acre tract) signed by appellants and appellees, since the court found that no family settlement or agreement had been made; and that the judgment of the court was contrary to the weight of the evidence.

Evidence of the plaintiffs tended to show that prior to the death of Nora Stolp in 1935, she and her husband H. C. Stolp owned and operated the three farms consisting of 160, 120 and 65-acre tracts, and that on June 1, 1938, the defendants and Otto Reschke and H. C. Stolp came to the Rathbun home with a deed which the four children were to sign to Melvin R. and Beulah Stolp; the children were to give their father H. C. Stolp a home wherever he chose to reside, and Melvin R. Stolp and Beulah Stolp told them to go ahead and sign the deeds and they would divide the proceeds from the oil and gas, if any were found, equally among the children. Edna A. Rathbun and Shirley Briscoe both testified to conversations with the deceased, H. C. Stolp.

Testimony of the defendant Melvin R. Stolp was to the effect that he had farmed his father's place since the spring of 1934 on a fifty-fifty basis, and that he first learned of his father's plan to deed the farm to him in the winter of 1937 or spring of 1938. He further testified that he never discussed the matter with Edna Rathbun or the Briscoes; denied that he had gone to the Rathbun home or requested that any of the deeds be signed; and said the consideration for the deed was his assumption of the Federal Land Bank loan,

stipulated as being $7,700 on June 1, 1938. Testimony of other witnesses supported that of Melvin R. Stolp.

As a part of plaintiffs' evidence, a letter written by Edna Rathbun was introduced in evidence dated May 10, 1947—prior to the time the suit was filed—wherein she stated her reasons for deeding the place over to Melvin R. Stolp but the reasons given in the letter were not the ones set forth in her petition.

The deposition of H. C. Stolp was taken by defendants after this case was filed in the district court, due legal notice having been given, and H. C. Stolp testified among other things that no family agreement was made as alleged in plaintiffs' petition nor that Melvin R. Stolp and Beulah Stolp would hold any oil or gas interests in the property for the benefit of all four children; that it was deeded to the Stolps because he (H. C. Stolp) was unable to see after it, and wanted Melvin and Beulah Stolp to have it; and that no consideration was *paid* for the deed. This deposition was taken on December 4, 1948, and on May 2, 1949, an order was entered by the lower court making H. C. Stolp an additional party defendant. However, no praecipe was filed and as a consequence no summons issued for H. C. Stolp. On May 17, plaintiffs procured an affidavit from H. C. Stolp signed by him with an "X" mark. In this affidavit he repudiated the material testimony in his deposition and made statements which were in substance identical with the part of the petition heretofore quoted. H. C. Stolp died about a month and a half after making this affidavit.

During the direct examination of Melvin R. Stolp, he was asked the following question:

"Q. Had you made any arrangement with your father, Henry C. Stolp, or anyone else under what terms or conditions you would take the land over?"

The above question was objected to on the ground that it was hearsay, not a part of any transaction with H. C. Stolp, and that the witness was incompetent to testify about a conversation with a deceased person. The objection was overruled, and Melvin R. Stolp then testified that he told his father he would take the place over and assume the Federal Land Bank mortgage without any reservations; and further that his father never reported to him that he (H. C. Stolp) had ever said anything to his daughter about an agreement relative to oil money.

Because of the sale in 1944 of the 120-acre tract, no relief respecting it was asked for in the petition.

The deeds to the several tracts were executed in June, 1938, and appellants and appellees stipulated that H. C. Stolp did not have or claim to have any interest in any of the tracts after that date. This action was filed more than ten years after the transfer of the property and defendants pleaded the bar of the statute of limitations and laches. Also on June 22, 1948, a petition for determination of descent was filed in the probate court with reference to the 65 acres standing in the name of Nora Stolp, and objections were filed by the appellants to the petition to determine descent setting up the same claim as is asserted in this action.

The facts above set out, while not constituting all the evidence in the case, are sufficient for the purpose of determining the questions raised in this appeal, which we will deal with in order.

Appellants first contend that the lower court erred in not admitting the affidavit of H. C. Stolp which he executed about one and one-half months before his death wherein he repudiated the essential parts of his testimony as given in the deposition. While plaintiffs in their heading to this question inquired whether or not the court erred in receiving and considering the testimony of H. C. Stolp by deposition, no question is raised as to the admissibility of the deposition, and the only matter presented is on the admissibility of the affidavit.

Our code of civil procedure (G. S. 1935, 60-2835) defines the limitation and scope of affidavits, particularly with reference to their use in the trial of an action; and after providing for filing the affidavit with the clerk of the court and service upon the adverse party or his attorney of record at least ten days before the day of trial, the testimony of the witness must be given orally, or by deposition if the adverse party gives notice that he desires to cross-examine the affiant. Of course in the situation presented in this case, the witness died before trial. However, the plaintiffs had open to them the same opportunity of taking a deposition before his death that the defendants had, and his testimony as set out in the affidavit could have been taken by deposition as easily by the plaintiffs as it was taken by the defendants.

The sole purpose of the affidavit sought to be introduced in evidence was to impeach the testimony of H. C. Stolp as given in his deposition. The mode of impeaching the testimony of a witness is well established in this state. (See Hatcher's Kan. Dig., Witnesses, § 125, Pt. 2, et seq., 9 West's Kan. Dig., Witnesses, § 388.) At the time the testimony is given, the foundation must be laid.

The record does not disclose that there was any cross-examination of H. C. Stolp at the time his deposition was taken and possibly under the circumstances such a procedure could not have been followed, since the impeaching statements were made after the time of taking the deposition.

We have examined the authorities submitted by the appellants. With reference to the case of *Tucker v. Welsh*, 17 Mass. 160, the court in its statement said it is not necessary that the impeached witness be first inquired of as to a different statement or that he be present when his credit is to be impeached; but we also note the court in that case does state that where the evidence tends to impeach testimony given by deposition, the court would give time for the witness to appear or for other depositions to be taken relative to the facts which were to be proved to impeach him.

*Gordon v. Munn*, 87 Kan. 624, 125 Pac. 1, which case appellants rely on and quote from at length, deals solely with the question of establishing *intent* and not *impeachment* of the witness and constitutes no authority for the error alleged. Other authorities cited by appellants in their brief are in general conflict with the rule in this state with reference to impeachment, to which we adhere. (*Insurance Co. v. Schroeder*, 48 Kan. 643, 29 Pac. 1078; *State v. Bartley*, 48 Kan. 421, 29 Pac. 701.)

H. C. Stolp lived one and one-half months after the procuring of the rejected affidavit and if plaintiffs' witnesses are to be believed, no reason existed why plaintiffs could not have taken a deposition as the defendants did. But in any event, no compliance with the code of civil procedure relating to the taking of depositions (G. S. 1935, 60-2819 et seq.) was attempted and under G. S. 1935, 60-2835, the affidavit could not have been used as a deposition since there was no compliance with that statute either. A diligent and bona fide belief that the deceased would have testified to the facts set out in the affidavit would have enabled plaintiffs to have those facts before the court by following the comparatively simple procedure provided by our code for taking depositions. We believe the view announced in *Mattox v. United States*, 15 S. Ct. 337, 156 U. S. 237, 39 L. Ed. 409, to be the logical rule and pertinent parts of the opinion are as follows:

"The cases in the state courts are by no means numerous, but these courts, so far as they have spoken upon the subject, are unanimous in holding that the fact that the attendance of the witness cannot be procured, or even that the witness himself is dead, does not dispense with the necessity of laying the proper foundation. . . . While the enforcement of the rule, in case of ·

the death of the witness subsequent to his examination, may work an occasional hardship by depriving the party of the opportunity of proving the contradictory statements, a relaxation of the rule in such cases would offer a temptation to perjury, and the fabrication of testimony, which, in criminal cases especially, would be almost irresistible. If it were generally understood that the death of a witness opened the door to the opposite party to prove that he had made statements conflicting with his testimony, the history of criminal trials leads one to believe that witnesses would be forthcoming with painful frequency to make the desired proof. The fact that one party has lost the power of contradicting his adversary's witness is really no greater hardship to him than the fact that his adversary has lost the opportunity of recalling his witness and explaining his testimony would be to him. There is quite as much danger of doing injustice to one party by admitting such testimony as to the other by excluding it. The respective advantages and disadvantages of a relaxation of the rule are so problematical that courts have, with great uniformity, refused to recognize the exception." (p. 248.)

Under the facts, therefore, the court committed no error in excluding the affidavit.

Plaintiffs next contend that the testimony of Melvin R. Stolp regarding a conversation with his father H. C. Stolp was inadmissible by reason of being incompetent and a communication and transaction with a deceased person. The statute under which plaintiffs contend the testimony was not admissible is as follows:

"No person shall be allowed to testify in his own behalf in respect to any transaction or communication had personally by such party with a deceased person, where either party to the action claims to have acquired title, directly or indirectly from such deceased person, or when the adverse party is the executor, administrator, heir at law, next of kin, surviving partner, or assignee of such deceased person, . . ." (G. S. 1935, 60-2804.)

Defendant Melvin R. Stolp testified to two matters over the objections of plaintiffs, which are in substance as follows: (a) That he had told the deceased he would take over the place and assume the loan as shown by the Federal Land Bank's records without any reservations; and (b) that the deceased never reported to him that he (deceased) had ever said anything to witness's sister about an agreement relative to oil money. As we interpret the record, the objection could only apply to (a) for the reason that in (b) the witness testified to the absence of a conversation rather than to a conversation itself.

This court held in *Coblentz v. Putifer*, 87 Kan. 719, 125 pac. 30:

"When it is alleged that a deed was procured by the undue influence of a son upon his mother, he may state whether at any time he asked or requested her to make such deed, when the manifest object of the question is to show

that he did not. To state that he did not ask or request such deed is the very opposite of testifying concerning a transaction or communication with the deceased grantor." (Syl. 2.)

The substance of the testimony of Melvin R. Stolp was also given by at least four other witnesses, three of whom were obviously impartial. Furthermore, his testimony was merely corroborative of the testimony of the deceased himself, and if the admission of the testimony had been error, which it was not, no prejudice could have resulted to plaintiffs in view of the abundance of other testimony to the same effect.

The testimony of Melvin R. Stolp was admissible; inasmuch as witnesses for plaintiffs testified to conversations with deceased, defendants had a right to present testimony as to conversations with deceased on the same subject matter.

"As stated in Corpus Juris, which statement has been quoted and cited by the courts, it frequently happens that evidence which might be inadmissible under strict rules is nevertheless introduced into the case through inadvertance or otherwise, under which circumstances it is held, sometimes as a result of statutory regulation, that the adverse party is entitled to introduce evidence on the same matters lest he be prejudiced. The party who first introduces improper evidence cannot object to the admission of evidence from the adverse party relating to the same matter. However, the admission of such evidence is not a matter of absolute right, but rests in the sound discretion of the court . . ." (31 C. J. S. 913-914.)

The trial court admitted the testimony of Melvin R. Stolp stating "some of the other testimony would be hearsay, too." We find no error in such a ruling.

Plaintiffs finally contend that the court erred in not setting aside the deed to the 65-acre tract in view of the finding that no family settlement had been made, and that the judgment of the court was contrary to the evidence. We will consider these two questions together.

Plaintiffs apparently proceeded in this case on the theory that they and the two defendant children of H. C. Stolp owned the three mentioned tracts. We fail to find anything in the record that indicates that any of them, at any time prior to the transfer to Melvin R. Stolp, ever owned any interest therein or had any right to dictate to their father H. C. Stolp how he should dispose of his property, and it is doubtful that insofar as the two tracts in the name of H. C. Stolp are concerned, any kind of an action could have been maintained by the plaintiffs to set aside the deeds or

claim any interest in the oil runs, without making H. C. Stolp a party to the suit. But whether that is true or not, it must be remembered that other defenses than a denial of the allegations of the petition were interposed, and the court's judgment in favor of the defendants may have been based on these other defenses. Since the deeds were executed more than ten years before the suit was filed, the court's judgment may have been based on the statute of limitations, laches, or even on the fact that the plaintiffs had unsuccessfully made the same claims in a determination of descent proceeding. This court said in the case of *Stromquist v. Nelson*, 159 Kan. 716, 158 P. 2d 458:

> "When a trial court makes no specific findings of fact but finds generally in favor of a party the presumption is that it found all facts necessary to sustain its judgment, and the burden is on an appellant, seeking review of any question depending on evidence to produce an abstract showing evidence to establish his position or to make it appear affirmatively the trial court erred." (Syl. 3.)

The rule is also well stated in *Gas Co. v. Jones*, 75 Kan. 18, 22, 88 Pac. 537, wherein this court said:

> "In the absence of special findings of fact, this court will assume that the trial court regarded as established all the facts shown by the evidence which were favorable to the successful party."

(See, also, *Kennedy v. Spalding*, 143 Kan. 76, 53 P. 2d 804.) In the instant case, no findings of fact were requested and none were made.

Plaintiffs seem to think that since no money was paid, the deeds could be set aside at any time for a failure of consideration. Assuming that no consideration was paid, it still would not be grounds for setting aside the deeds in this case. The general rule is that as between the parties, their heirs or privies, a deed is good without consideration in the absence of a wrongful act on the part of the grantees such as fraud or undue influence. No contention is made of any fraud or undue influence by the defendants at the time of execution of the deeds. (26 C. J. S. 189, § 16; 16 Am. Jur. 472, § 57, and cases there cited.)

It is unnecessary, however, to resort to that rule in passing upon this question. The evidence was that all of the property was transferred to the defendant Melvin R. Stolp and Beulah Stolp because they assumed and agreed to pay the mortgage on the three tracts and that they wished to keep the property in the family and from having it "foreclosed and go to someone else."

There was ample evidence to support the judgment and no error appears in the record upon the court's rulings upon the admission or rejection of evidence.

The judgment is affirmed.

WEDELL, J., concurs in the result.