No. 40,861

In the Matter of the Condemnation of Land for Kansas Turnpike. (W. R. Rowhuff and Ellen Rowhuff, his wife, *Appellees*, v. The Kansas Turnpike Authority, *Appellant*.)

(324 P. 2d 147)

Opinion filed April 12, 1958.

*Robert M. Cowger*, of Topeka, and *James W. Putnam*, of Emporia, argued the cause, and *Thomas W. Cunningham* and *Bruce Works*, both of Topeka, and *Richard Mankin*, of Emporia, were with them on the briefs for the appellant.

*Everett E. Steerman* and *Elvin D. Perkins*, both of Emporia, argued the cause and were on the briefs for the appellees.

The opinion of the court was delivered by

Robb, J.: This is an appeal in an eminent domain proceeding commenced by the Kansas Turnpike Authority to condemn 6.45 acres of land made necessary by the construction of the Kansas Turnpike. The authority moved to abandon the proceeding, to withdraw funds in the amount of the appraisers' award paid into the clerk of the court, and to dismiss the landowners' appeal from the appraisers' award, all of which motions were overruled by the trial court. The issues were presented to a jury, which returned its verdict in favor of recovery by the landowners, and the trial court en-

tered judgment thereon. The authority's motion for new trial was overruled and it timely appealed.

··· At the outset we are confronted with a motion by the landowners to dismiss the appeal for the reason the abstract filed by the authority is insufficient but the basis for the motion has become moot because the authority has since filed a supplemental abstract containing its motion for new trial and it is, therefore, not necessary to discuss or determine the motion to dismiss.

As shown by the map herein included, the landowners' farm was shaped by the circuitous route of the Neosho river and contained sixty acres. The land taken (spotted portion of map) amounted to

approximately 6.45 acres and left a remainder of approximately 53.55 acres. In making a fill to raise the grade for the roadbed of the turnpike, the authority created a permanent dam across the natural channel of the Neosho river at point "A" on the map. The authority cut into the natural channel of the river at "D" and straightened it into the new channel which was bridged at "B". The new channel then rejoined the natural channel at "C". Thus the natural channel from "D" to "E" became a *still* instead of a *running* river. The original plans of the turnpike provided for the taking of the 6.45 acres to fill in between the banks forming this segment of the old channel.

The order of the trial court overruling the motion of the authority to abandon the eminent domain proceeding and withdraw the funds deposited, and to dismiss the landowners' appeal from the award of the appraisers constitute the first and second claims of error on the part of the authority. In support of its contention of error the authority cites the provisions of G. S. 1949, 26-101 (general condemnation law) and G. S. 1949, 60-3105 (code of civil procedure); *State Highway Comm. v. Phillips,* 146 Kan. 78, 69 P. 2d 12; and *State Highway Comm. v. Puskarich,* 148 Kan. 385, 83 P. 2d 131. In answer the landowners cite *State Highway Commission v. Safeway Stores,* 170 Kan. 545, 228 P. 2d 208 and *Lowrey v. State Highway Comm.,* 170 Kan. 548, 228 P. 2d 210. We do not deem it necessary to detail all the procedures and rulings discussed and analyzed in the above statutes and cases, but turn directly to the toll roads and turnpike act since it is the special act controlling eminent domain proceedings by the authority.

G. S. 1957 Supp. 68-2006 of the above-mentioned act authorizes and empowers the authority to acquire by purchase or condemnation any land, rights, and other property, including lands lying under water and riparian rights, deemed necessary or convenient for the construction of any project or in the restoration of private property damaged or destroyed. It is further provided that title and right to possession of such property shall immediately vest upon deposit with the clerk of the court by the authority of the total amount of the appraised price, court costs and fees notwithstanding that an appeal is taken by either of the parties.

There can be no question under the above statute as to what happened in our present case when the authority made deposit of the appraised price, court costs and fees. Title and right to pos-

session immediately vested in the authority to whatever land or right therein that it was condemning. (*State, ex rel., v. Kansas Turnpike Authority,* 176 Kan. 683, 699, 273 P. 2d 198.)

In regard to the authority's complaint that the landowners were allowed to prove damages to their remaining land by reason of a taking of land other than that belonging to the landowners, we are aware of the consequential damage cases cited by the authority (*McIntyre v. Board of County Comm'rs of Doniphan County,* 168 Kan. 115, 211 P. 2d 59, and *Richert v. Board of Education of the City of Newton,* 177 Kan. 502, 280 P. 2d 596) but it would unduly expand the rule in those cases to apply it to the point here involved. The point is the landowners' testimony tended to show that by reason of the fill (broken lines on each side of the turnpike as they appear on the map from the new channel bridge to the northeast) the flood hazard in the Neosho river valley and the remaining land of the landowners was enhanced. The authority failed to make it affirmatively appear in the record that its substantial rights were prejudiced so as to justify reversal since we have no way of knowing whether the jury placed much, if any, credence upon this evidence or whether any damage therefor was included in the general verdict returned. Under the circumstances we are bound by the rule that in the absence of a request for special findings of fact, a general verdict such as the one we have here resolves all controversial issues in favor of the prevailing party. (*Briscoe v. Reschke,* 170 Kan. 367, 226 P. 2d 255; *Taylor v. State Highway Commission,* 182 Kan. 397, 320 P. 2d 832.)

With regard to the question as to the excessiveness of the verdict, the sum of $1,935.00 was allowed for the land appropriated and $6,693.75 for the damage to the remaining land. We cannot tell from the general verdict what weight, if any, was given by the jury to the evidence on damages, as previously stated. We can find no reason in the record and the authority points to none to justify us in saying that the verdict was excessive.

We have considered the questions discussed in the briefs and all pertinent authorities cited in support thereof but we find no error is sufficiently shown to justify a reversal and the judgment of the trial court should be and is hereby affirmed.

Jackson, J., not participating.