45 F.3d 440
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Kenneth Daniel RUPP, II, Plaintiff-Appellee, Cross-Appellant,
v.
PUROLATOR COURIER CORP., Emery Air Freight Corporation,
Jerry Meyer, Mark Fitzgerald,
Defendants-Appellants, Cross-Appellees.
 Nos. 93-3276, 93-3288.
 United States Court of Appeals, Tenth Circuit.
 Dec. 20, 1994.
 
 Before EBEL, McKAY and REAVLEY,* Circuit Judges.
 ORDER AND JUDGMENT**
 REAVLEY, Circuit Judge.
 
 
 1
 Kenneth Rupp claims that he was constructively discharged for reporting the sexual harassment of another employee. He asserted claims under Title VII[1] and state law against his employers Purolator Courier Corporation and Emery Air Freight Corporation. During the period in question Purolator was acquired by Emery, and after the merger the company was known as Emery-Purolator. After a bench trial the district court entered a money judgment in Rupp's favor, the damages consisting largely of front pay discounted to present value. Both Rupp and Emery-Purolator appeal.
 
 DISCUSSION
 A. Constructive Discharge
 
 2
 Rupp's position at trial was that after he reported the sexual harassment of Sandy Cleveland, he was so mistreated by his superiors that he was compelled to resign. Emery-Purolator argues that the district court erred in finding that Rupp was constructively discharged.
 
 
 3
 The test for a Title VII constructive discharge claim is whether the employer "has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." Derr v. Gulf Oil Corp., 796 F.2d 340, 344 (10th Cir.1986). The clearly erroneous standard of review applies to the district court's finding of constructive discharge. Hirschfeld v. New Mexico Corrections Dep't, 916 F.2d 572, 580 (10th Cir.1990).
 
 
 4
 After our review of the trial record, we cannot say that the district court clearly erred in finding that Rupp was constructively discharged. To be sure, the court heard evidence from defendants suggesting that Rupp had resigned because he was unable to adjust to his new work environment after the acquisition of Purolator by Emery, because he suffered a loss of autonomy and authority after the merger, or because he was unable to handle criticism of his job performance. However, the court heard ample evidence to the contrary. Given the deference we must afford the trial court which heard the live testimony and weighed the credibility of the witnesses, we are not "left with the definite and firm conviction that a mistake has been committed." Id. (citation omitted).
 
 
 5
 By way of brief summary, the district court heard evidence supporting the following scenario. Rupp was a full-time driver for Purolator in the Wichita area and was promoted to "lead courier" in the area. He had a good record with the company. Mark Fitzgerald, a Purolator supervisor out of Omaha, was sent to Wichita in March of 1988 to help coordinate the merger of Emery and Purolator operations. During this period Cleveland applied for a job. She was in the process of going through a divorce and was in dire need of employment. Fitzgerald harassed her by repeatedly asking her out, making unwanted advances, and suggesting that her employment prospects depended on accepting his advances. Cleveland rebuffed Fitzgerald's advances, and reported the harassment to Chris Sinfellow, a company customer service representative. Sinfellow then reported the harassment to Rupp because she viewed Rupp, lead courier at the time, as the appropriate supervisor to apprise of the allegations. Rupp forwarded the complaint to Kevin Cronin, Rupp's superior in the Kansas City office. Cronin and Fitzgerald were good friends. Rupp also confronted Fitzgerald, which resulted in an angry response from Fitzgerald. Rupp became very upset after the confrontation and sought medical attention.
 
 
 6
 After the merger of operations was completed in March of 1988, Jerry Meyer became manager of the Wichita facility. Over the course of the few days following Rupp's actions regarding Cleveland's complaint, Fitzgerald and Meyer subjected Rupp to hostile and threatening treatment. They yelled at him to hurry up and get on the road in front of fellow drivers, unfairly berated Rupp for his job performance, took him off his regular route, relegated him to sweeping the terminal, and subjected him to reduced hours and a shifting schedule. Rupp resigned in the midst of this treatment. He testified that Meyer admitted to him, in so many words, that his adverse treatment was in retaliation for reporting Cleveland's sexual harassment complaint. He had apparently become a pariah to his superiors and could expect no better treatment in the future.
 
 B. Front Pay
 
 7
 After he resigned from Emery-Purolator, Rupp obtained employment as an investigator for a public defender's office. Relying on the plaintiff's expert testimony, the court awarded him front pay in an amount representing the present value of the difference in pay between his old job and new job, for a period up to his expected date of retirement at age sixty. Emery-Purolator complains that the district court abused its discretion in awarding such front pay.
 
 
 8
 In affirming another award of front pay, we explained in Fitzgerald v. Sirloin Stockade, Inc., 624 F.2d 945, 957 (10th Cir.1980): "the trial court has a broad discretion in fashioning relief to achieve the broad purpose of eliminating the efforts of discriminatory practices and restoring the plaintiff to the position that she would have likely enjoyed had it not been for the discrimination."
 
 
 9
 A front pay award must specify an end date and take into account the plaintiff's future earnings from other sources. Carter v. Sedgwick County, 929 F.2d 1501, 1505 (10th Cir.1991). The court complied with these requirements. As reasons for awarding front pay in lieu of reinstatement, the court noted that plaintiff has found other suitable employment and was not seeking reinstatement, the defendant corporations had been bought out by a third corporation, and there was no indication that Rupp could return to a position with that company. Given these circumstances we find no abuse of the district court's broad discretion to fashion relief under Title VII.
 
 C. Award of Employer's FICA Contributions
 
 10
 In calculating front and back wages the court included the employer's contribution of Rupp's social security taxes in the amount of $9683. We agree with Emery-Purolator that the court erred in including this amount. It would not have been paid to Rupp had he stayed with the company, but would have been sent to the government.[2] We find untenable the expert's view that from an "economic standpoint" this amount was "paid" by the employee in the form of reduced wages. Including this amount in Rupp's award amounts to a windfall benefit that he never would have received had he stayed with the company.
 
 D. Evidentiary Rulings
 
 11
 Emery-Purolator complains that the district court erred in admitting and relying on hearsay evidence. Specifically, it complains that Rupp and another driver were allowed to testify about statements made by supervisors with Emery-Purolator, and that the court considered a letter from the company regarding Rupp's application for unemployment compensation. For several reasons we find no reversible error. First, Emery-Purolator does not establish that it objected to most of this evidence. Under FED.R.EVID. 103: "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and ... [i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context...." Second, under FED.R.EVID. 801, a statement is not hearsay if it is an admission by a party-opponent or an agent or servant of the party-opponent. Emery-Purolator fails to explain why any of the testimony complained of would not qualify as an admission. Third, it appears that most of the statements complained of were admissible to prove either their effect on the listener, namely Rupp,[3] or to prove knowledge or intent on the part of defendants.[4] For such purposes the testimony was admissible. Faulkner v. Super Valu Stores, Inc., 3 F.3d 1419, 1434 (10th Cir.1993) ("Statements offered for the effect on the listener, however, are generally not hearsay."); FED.R.EVID. 803(3) (providing exception to hearsay rule for statements of "the declarant's then existing state of mind ... such as intent, plan, motive, design....").
 
 E. Cross-Appeal
 
 12
 Rupp cross-appeals, arguing that the district court erred in dismissing by summary judgment his Kansas common law claim for outrageous conduct. To prevail on such a claim, the plaintiff must establish, inter alia, that the defendant's conduct was extreme and outrageous. Burgess v. Perdue, 721 P.2d 239, 242 (Kan.1986). The tort is not favored under Kansas law, and only the most extreme and outrageous of conduct will give rise to such a cause of action. EEOC v. General Motors Corp., 713 F.Supp. 1394, 1397 (D.Kan.1989). The defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond the bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Taiwo v. Vu, 822 P.2d 1024, 1029 (Kan.1991). We agree with the district court that the conduct here did not rise to the level required for liability under the Kansas common law tort. Compare Gomez v. Hug, 645 P.2d 916, 918 (Kan.Ct.App.1982) and Taiwo, 822 P.2d at 1029-30.
 
 CONCLUSION
 
 13
 The judgment is reduced by $9683, the amount the district court included for employer FICA contributions. In all other respects the judgment is affirmed.
 
 
 14
 AFFIRMED AS MODIFIED.
 
 
 15
 EBEL, Circuit Judge, dissenting.
 
 
 16
 I respectfully dissent. The parties are well aware of the facts in this case, and thus no purpose would be served by a further recitation of them. However, it is my judgment that the district court's finding of constructive discharge on this record was clearly erroneous. The conduct attributable to the defendant was neither egregious enough nor persistent enough to constitute constructive discharge. The conduct complained of lasted only for approximately three weeks, and it must be viewed in the context of the ongoing merger at that time of plaintiff's corporate employer.
 
 
 17
 Given the majority's holding that affirms the district court's finding of constructive discharge, I make only a couple of other brief remarks on the other issues in the case. I would not address the front pay issues because they were not raised below and thus are not properly preserved. The defendant did not make an adequate objection to the front pay issues.
 
 
 18
 On the evidentiary issues, I agree with the majority conclusion.
 
 
 
 *
 The Honorable Thomas M. Reavley, United States Court of Appeals, Fifth Circuit, sitting by designation
 
 
 **
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [1]
 Title VII covers not only employees who are discriminated against on the basis of their sex, but one who is discriminated against "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. Sec. 2000e-3(a)
 
 
 [2]
 Conceivably employer contributions might affect an employee's future social security benefits upon retirement. However, the expert made no attempt to calculate how these contributions would affect Rupp's retirement benefits; indeed, he admitted that the employer's contribution was "not money [Rupp] actually gets."
 
 
 [3]
 For example, three of the five instances of hearsay testimony of which Emery-Purolator complains include (1) "plaintiff's testimony that Kevin Cronin, his Kansas City supervisor, warned him not to get into trouble over the matter," (2) "Plaintiff's testimony that Ken Braley, another supervisor, warned him about getting involved in the harassment complaint," and (3) "Plaintiff's testimony that Kevin Cronin, a good friend of Fitzgerald, never even discussed the matter with Fitzgerald." A critical inquiry in this case was whether Rupp's treatment amounted to a constructive discharge. The effect that statements made to Rupp had on his state of mind was relevant to this inquiry
 
 
 [4]
 For example, Emery-Purolator complains that "[t]he court used the hearsay testimony of Cronin, Gillman and Braley to hold that they knew the facts and circumstances of the harassment of Cleveland and the plaintiff, and each joined in an effort to participate directly in the harassment, cover up the incidents by distorting the facts, or engage in passive complicity in the actions taken against Rupp."